IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3:22CR79 |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD HUTCHINSON, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Michelle M.

Baeppler, First Assistant United States Attorney, and Matthew Simko, Assistant United States

Attorney, and files this Sentencing Memorandum. The government moves the court to impose a

guideline sentence of 46 months.

Respectfully submitted,
MICHELLE M. BAEPPLER
First Assistant United States Attorney

By:     /s/ *Matthew D. Simko*
        Matthew D. Simko (OH: 0086787)
        Assistant United States Attorney
        Four Seagate, Suite 308
        Toledo, OH 43604
        (419) 241-0724
        (419) 259-6360 (facsimile)
        Matthew.Simko@usdoj.gov

## I.     Relevant Law

The Supreme Court has instructed that a sentencing court should first properly calculate the advisory Sentencing Guidelines range, then permit the parties "an opportunity to argue for whatever sentence they deem appropriate," consider all of the 18 U.S.C. § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Gall v. United States*, 552 U.S. 38, 49-50 (2007).  The factors include the nature and circumstances of the offense; the history and characteristics of the defendant; to afford adequate deterrence (both personal and general); to protect the public; and the need for the sentence to reflect the seriousness of the offense; promote respect for the law; and to provide a just punishment.  18 U.S.C. § 3553(a).

### a.  Departures

Hutchinson has requested the Court depart downward based on Diminished Capacity. Diminished Capacity requires the Court to find that Hutchinson has "a significant impaired ability…to control behavior that [he] knows is wrongful." 5K2.13, Application Note 1. Hutchinson's psychological report indicates he was well aware of his mental disorders, his ability to seek treatment, and his ability to receive medication and treatment. Further, his actions are not the result of a momentary loss of control. Conversely, he and his wife's buying and selling of guns lasted months, if not almost a year. Further, the weapons they obtained were altered, presumably to look cooler, test fired, and for which ammunition and multiple magazines were purchased.[1] Hutchinson's crime was thought out and not based on his lack of impulse control.

---

[1] Melissa Hutchinson disclosed at her sentencing hearing that Richard Hutchinson's friend gave her a firearm in March 2021. Further she claimed that she went to the shooting range with Richard, although she claimed he did not shoot any guns.

Further, the Court cannot grant a downward departure if, among other things:

> (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence;

> (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public

5K2.13. Here, Hutchinson disclosed that he has thoughts of murdering people and killing himself. His criminal history includes both drug and violent crime. Therefore, the Court cannot grant a downward departure based on the need to need to protect the public from Hutchinson and because of his prior record.

### b. Variance

While the guidelines are no longer binding, variances from the guidelines are not appropriate when the circumstances of the offense represent ordinary cases. In these cases, variances are discouraged when a sentencing court merely feels that the guideline range fails to properly reflect § 3553(a) considerations. *See Kimbrough v. United States*, 552 U.S. 85, 108 (2007). The Guideline Commission "has the capacity courts lack" that is, "to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Id*., 108-109 (citing *United States v. Pruitt*, 502 F.3d 1154, 1171 (CA10 2007)). When a court does vary from a guideline, it must articulate, in open court, the specific reason why it is doing so. 18 U.S.C. 3553(c)(2). A sentence may be held procedurally unreasonable if it is marked by significant procedural error, such as failing to adequately explain the chosen sentence—including an explanation for any deviation from the U.S. Sentencing Guidelines Manual range. *United States v. Houston*, 529 F.3d 743, 753 (6th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007)).

3

The Court should not vary downward in this case. To the extent Hutchinson's mental illness contributed to his crime, Hutchinson was well aware of it, was aware he could seek treatment for it and elected to commit these crimes instead. Prior to March 2021, when he and his wife obtained the first firearm that the government is aware of, Hutchinson had the care of a primary physician, has received mental health treatment through the courts, and has obtained his own treatment.

Further, Hutchinson is likely exaggerating the extent his mental health and world events played in these crimes. Hutchinson cites three events: a shooting at his residence (report attached), COVID-19, and the George Floyd protests as aggravating factors. The government has obtained the police report from the "shooting" at his residence and it shows that (1) Hutchinson did not call police when the alleged shooting happened, (2) no one else (neighbors, etc.) called police when the alleged shooting happened, and (3) police located four BB holes and a BB in the defendant's window rather than his windows being "shot out". Finally, COVID-19 and the killing of George Floyd began or happened nearly two years before Hutchinson obtained the final firearm in this case. What does appear to be true is that Hutchinson, base on his statements and record, is a paranoid drug addict that has violent ideations and tendencies. This should be seen as aggravation, not mitigation, by this Court and the Court should impose a 46 month sentence.

## II.     Advisory Sentencing Guideline Range

Misapplication of the sentencing guideline sections is not considered as harmless error, but rather as a "significant procedural error" necessitating remand for resentencing. *United States v. Anderson*, 526 F.3d 319 (6th Cir. 2008). Both parties have objected to the sentencing guideline. The Court should find that the guideline after acceptance is 37-46 months.

   **a.** The Court should find Hutchinson's prior Robbery offense as a enumerated crime of violence.

The government concedes, in the wake of the Supreme Court's recent decision in *Borden v. United States*, 141 S. Ct. 1817 (2021), that Hutchinson's robbery conviction under Ohio Revised Code § 2911.02(A)(2) does not constitute a "crime of violence" under the force clause in Guidelines § 4B1.2(a)(1).  *Borden* held that crimes in which the force element carries a *mens rea* of recklessness or less do not qualify as ACCA violent felonies, *Borden*, 141 S. Ct. at 1834. Defendant also cites to the pending case of *United States v. David Butts*, No. 21-3783 (6th Cir. filed Sept. 1, 2021). It is true the government has conceded that robbery does not count under the elements/force clause, however, the government has and continues to argue it should count under the enumerated clause.

A prior conviction can qualify as a "violent felony" or "crime of violence" in two separate ways:  under the force/elements clause, or under the enumerated clause.  18 U.S.C. § 924(e)(2)(B)(i)&(ii); U.S.S.G. § 4B1.2(a)(1)&(2).  Unlike in the ACCA context, however, the Guidelines' enumerated clause includes "robbery" among its listed crimes.  U.S.S.G. § 4B1.2(a)(2).

The 6th Circuit has previously outlined the contours of generic robbery, although in reference to different statutes.  *United States v. Yates*, *,* 866 F.3d 723 (6th Cir. 2017*)*, 866 F.3d at 733-34 (Ohio Rev. Code § 2911.02(A)(3) robbery, requiring a defendant to "use or threaten the immediate use of force against another"); *United States v. Camp*, 903 F.3d 594, 601 (6th Cir. 2018) (Hobbs Act robbery).  In both of those cases, this Court relied in part on Model Penal Code Section 222.1.  It provides as follows:

> (1)  Robbery Defined.  A person is guilty of robbery if, in the course of committing a theft, he:

(a) inflicts serious bodily injury upon another; or
(b) threatens another with or purposely puts him in fear of immediate serious bodily injury; or
(c) commits or threatens immediately to commit any felony of the first or second degree. An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.
(2)  Grading. Robbery is a felony of the second degree, except that it is a felony of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury.

Model Penal Code § 222.1. The Model Penal Code imports a *mens rea* that includes reckless culpability.  Model Penal Code § 222.1, editor's explanatory note.

In *United States v. Yates,* the Court found that generic robbery "requires a confrontation that at the very least implies the threat of violence." *Yates,* 866 F.3d at 733 (citing *United States v. Mitchell*, 743 F.3d 1054 (6th Cir. 2014)).  Further, it is widely accepted "that there is not sufficient force to constitute robbery when the thief snatches property from the owner's grasp so suddenly that the owner cannot offer any resistance to the taking." *Yates*, 866 F.3d at 733-34 (quoting Wayne R. LaFave, Substantive Criminal Law 20.3(d)).  It concluded that Ohio Section 2911.02(A)(3) robbery, requiring a defendant to "use or threaten the immediate use of force against another," was insufficient because under Ohio caselaw because it could be accomplished "based on a showing of nonviolent force." *Yates*, 866 F.3d at 732, 734.  Notably, Ohio (A)(3) robbery **does not** require any physical injury at all, nor force that is violent and "capable of causing physical pain or injury to another person." *Id.* at 728; *see also id*. at 729-32. However, that contrasts with Ohio (A)(2) which does.

In the instant case, defendant has an underlying conviction for Ohio robbery under R.C. § 2911.02(A)(2).  Under (A)(2), there is a requirement that the defendant inflict physical harm on another, or at least attempt or threaten to do so.  The "physical harm" that Ohio requires in this (A)(2) robbery provision "requires violent force, that is, force capable of inflicting pain or

6

injury." *United States v. Johnson*, 933 F.3d 540, 545-46 (6th Cir. 2019). Accordingly, the Court should find Robbery is an enumerated crime of violence.

In *Butts,* neither government nor defense made the make an alternative enumerated-crime argument.  The government requested, upon remand to the district court, the Court direct the district court to consider that alternative (enumerated-crime argument) in the first instance, with the benefit of briefing by the parties.  As of this date, a decision is still pending before the Court.

> **b.** The Court should find the offense involved a high capacity magazine and should set the offense level at 22, before acceptance of responsibility.

U.S.S.G 2K2.1(a)(3) sets the offense level at 22 if:

> the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense.

The notes to 2K2.1 impose the enhancement if "a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm."

Here, the government seized the Glock pistol from the pawnshop after Richard and Melissa Hutchinson pawned it. However, it is reasonable to conclude that the Glock was in their residence in close proximity to the large capacity magazines during a relevant period prior to

their pawning it. Search warrant photographs show that Richard Hutchinson had access to the

safes located in his closet because he had access to the keys to the safe[2]:



 

---

[2] No government report states that the keys in the photograph were located where they are depicted in the photograph, however, no agent has a memory of searching for or locating the keys. While it would have been ideal to note the location of the keys when found, it is not often agents note what they did not do during a search (i.e. "I did not have to search for the keys…". The reasonable conclusion, therefore, is that the keys were located where they are depicted in the photograph.

The purpose of the enhancement is not "gotcha"; it is to acknowledge the more dangerous nature of a defendant's conduct, a danger that is present when a defendant can discharge a large number of rounds without reloading. Here, Hutchinson, a paranoid, drug-addicted, violent felon, had multiple high capacity magazines along with this firearm. The danger was present and real and the Court should not ignore the substance of this enhancement and merely acknowledge its form.





9

**III.     Factors under 18 U.S.C. 3553(a)(1)**
       **a.  History and Characteristics of the Defendant**

Richard Hutchinson has had a history of drug-related and violent crime. He knows, and has been aware for nearly a decade, that he has paranoid and depressive mental illness that contribute to his crimes. Hutchinson has had homicidal and suicidal ideations and acknowledged preparations for a coming violent conflict. As a result, Hutchinson used his wife to acquire multiple firearms.

**IV.     Factors under 18 U.S.C. 3553(a)(2)**
       **a.  The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide a Just Punishment**

Hutchinson has received everything bit of rehabilitation the medical and justice system has to offer. He has been seen at multiple hospitals, multiple mental health and drug rehab facilities, has been assigned to an intensive probation officer, and has had the involvement of a drug court judge. Despite all this, Hutchinson neglected to continue adequate treatment and ended up surreptitiously obtaining firearms. A conclusion that we here in the federal government are equipped when all the doctors, probation departments, and judges were not does not promote respect for the law. A just punishment in this case would be a guideline sentence followed by the maximum term of supervised release.

      **b.  Afford adequate Deterrence**

The Sixth Circuit has held that "an unusually high likelihood of recidivism is also a valid factor upon which to base an upward departure." *United States v. Thomas,* 24 F.3d 829, 833 (6th Cir.1994*),* citing U.S.S.G. § 4A1.3; see also *United States v. Elliott*, 521 Fed. Appx. 513 (6th Cir. 2013). Earlier this year, the United States Sentencing Commission released a report about federal defendants convicted of firearms offenses. *Recidivism of Federal Firearms Offenders*, United

States Sentencing Commission, November 2021. The report details the criminal history of defendants released from federal prison in 2010 that had been convicted of firearms offenses. The report found that these defendants had the highest recidivation rate compared to all other defendants and that these defendants recidivated the fastest of all defendants. Id. at 23. Also, the report found that these defendants were more likely to commit a new violent offense than any other defendant. Id. at 26.

While the government is not requesting an upward departure, a guideline sentence of 46 months would impose a period of incapacitation/deterrence as well as warn the defendant that future offenses will be met with similar guideline sentences if he does not maintain treatment. A downward variance would accomplish none of these goals.

## V. Conclusion

The defendant, after having received all assistance the government can reasonably offer, obtained multiple firearms, high capacity magazines, and ammunition. He did this knowing of his diagnosed paranoia and drug dependency. His created a dangerous circumstance that must be punished with a guideline sentence of 46 months.

Respectfully submitted,

MICHELLE M. BAEPPLER
First Assistant United States Attorney

By:    /s/ *Matthew D. Simko*
Matthew D. Simko (OH: 0086787)
Assistant United States Attorney
Four Seagate, Suite 308
Toledo, OH 43604
(419) 241-0724
(419) 259-6360 (facsimile)
Matthew.Simko@usdoj.gov

11